IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROBERT L. ALLEY, )
)
        Petitioner, )
)
v. ) C.A. No. 16-569 (MN)
)
KOLAWOLE AKINBAYO, Warden and )
ATTORNEY GENERAL OF THE STATE )
OF DELAWARE, )
)
        Respondents.[1] )

---

Robert L. Alley. *Pro se* petitioner.

Gregory E. Smith, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

---

## MEMORANDUM OPINION[2]

October 17, 2018
Wilmington, Delaware

---

[1] Warden Kolawole Akinbayo replaced former warden Steven Wesley, an original party this case. *See* Fed. R. Civ. P. 25(d).

[2] This case was re-assigned from the Honorable Gregory M. Sleet's docket to the undersigned's docket on September 20, 2018.

Noreika, United States District Judge

Pending before the Court is a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Robert L. Alley ("Petitioner"). (D.I. 1). The State filed an Answer in opposition. (D.I. 9). For the reasons discussed, the Court will deny the Petition.

## I. BACKGROUND

In March, 2013, a New Castle County grand jury indicted Petitioner on two counts of first degree robbery and one count of wearing a disguise during the commission of a felony. *See Alley v. State*, 119 A.2d 42 (Table), 2015 WL4511348, at *1 (Del. Jul. 24, 2015). On August 28, 2014, Petitioner entered a guilty plea to a single count of the lesser-included offense of second degree robbery, in exchange for which the State dismissed the balance of the indictment. (D.I. 9 at 2). On December 19, 2014, the Superior Court sentenced Petitioner as a habitual offender to eight years and six months at Level V incarceration, with credit for 726 days previously served. *See Alley*, 2015 WL 4511348, at *1. The Delaware Supreme Court affirmed Petitioner's conviction and sentence on direct appeal. *Id.* at *4.

In August 2015, Petitioner filed in the Delaware Superior Court a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 9 at 2). In November 2015, a Superior Court Commissioner recommended that Petitioner's Rule 61 motion be denied. *See State v. Alley*, 2015 WL 7256928, at *4 (Del. Super. Ct. June 6, 2014). The Superior Court adopted the Commissioner's Report and Recommendation and denied the Rule 61 motion in March 2016, and the Delaware Supreme Court affirmed that decision. *See Alley*, 2016 WL 3563490, at *2.

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete

2

round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell*, 543 U.S. at 451 n.3; *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989). Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51.

C. **Standard of Review**

When a state's highest court has adjudicated a federal habeas claim on the merits,[3] the federal court must review the claim under the deferential standard contained in 28 U.S.C.

---

[3] A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than

3

§ 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) and (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied. *See Harrington v. Richter*, 562 U.S. 86, 98-101 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002). For instance, a decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.* In turn, an "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014).

---

on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

Finally, when performing an inquiry under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

### III.  DISCUSSION

Petitioner's timely filed habeas Petition alleges four grounds for relief: (1) the Superior Court violated due process by declaring him a habitual offender and sentencing him as such in the same proceeding without providing him with an opportunity to challenge his habitual offender status; (2) the State breached the plea agreement; (3) defense counsel provided ineffective assistance by failing to challenge Petitioner's status as a habitual offender; and (4) the Superior Court improperly relied on Petitioner's 2008 felony conviction as one of the predicate convictions for his habitual offender status. The State filed an Answer to the Petition, arguing that the claims should be dismissed as meritless and/or procedurally barred. (D.I. 9). Thereafter, Petitioner filed a Memorandum in Support of his Petition (D.I. 14), essentially re-arguing and amplifying his original Claims.

#### A.  Claim One: Due Process Violation

In Claim One, Petitioner asserts that the Superior Court violated his due process rights by declaring him a habitual offender and sentencing him as such in a single hearing. He also contends that he was not provided an opportunity during that hearing to challenge the validity of the 2008

5

felony conviction that was used as one of the qualifying felony convictions for his habitual offender status. (D.I. 14 at 21-22).

The following excerpts from Petitioner's various state court proceedings provide background facts that are particularly relevant for reviewing Claim One.

> The genesis of [Petitioner's] main complaint results from a guilty plea he entered into in 2008. At that time, [Petitioner] pled guilty to a felony charge which was subsequently used as a predicate offense for the habitual offender motion filed by the State in this case in 2014. As part of the 2008 plea agreement, according to [Petitioner] at least, the State agreed to not file a motion to declare him a habitual offender in exchange for his plea. Accordingly, [Petitioner] pled guilty in 2008 to Felony Resisting Arrest.

*Alley*, 2015 WL 7256928, at *2.

> On March 22, 2013, subsequent to his arrest in this case, [Petitioner] filed a [separate] pro se motion for postconviction relief. In short, [Petitioner] sought to undo his 2008 guilty plea so as to avoid the possibility of being declared a habitual offender in the present robbery case. [Petitioner] claimed that his 2008 defense counsel [] incorrectly advised him that he was eligible for habitual offender status, when in fact he was not.

*Alley*, 2015 WL 7256928, at *2. During Petitioner's August 2014 guilty plea hearing in the instant case, defense counsel informed the Superior Court that Petitioner planned to challenge the State's motion to seek habitual offender sentencing and that he was awaiting a decision in the other post-conviction proceeding challenging his 2008 conviction. *See Alley*, 2015 WL 4511348, at *1. By the time Petitioner's sentencing hearing in this case was held in December 2014, the Superior Court had denied Petitioner's post-conviction motion challenging his 2008 felony conviction, and the Delaware Supreme Court had affirmed that decision. *See State v. Alley*, 2014 WL 605440, at *1 (Del. Super. Ct. Feb. 14, 2014); *Alley v. State*, 105 A.3d 988 (Table), 2014 WL 7009961 (Del. Nov. 20, 2014). Consequently, during the December 2014 sentencing hearing in the instant

matter, defense counsel informed the Superior Court that there was no good faith basis to oppose the State's habitual offender motion. *Id.* at *2.

On direct appeal, Petitioner argued that his 2008 felony conviction was invalid and, as a result, the State failed to establish that he qualified as a habitual offender by affirmatively proving he had the requisite number of convictions. (D.I. 13-9 at 5-6). The Delaware Supreme Court denied this argument as meritless, because it had already determined the validity of Petitioner's 2008 felony conviction when it affirmed[4] the Superior Court's denial of his separate Rule 61 motion[5] challenging that 2008 felony conviction. *See Alley*, 2015 WL 4511348, at *2.

Thereafter, Petitioner raised the same argument in his Rule 61 motion challenging the 2014 conviction at issue here. The Superior Court denied the argument, explaining

> [o]n February 14, 2014, [the Superior Court] denied [Petitioner's] motion for postconviction relief [challenging his 2008 conviction]. On November 20, 2014, the Delaware Supreme Court affirmed [that] ruling. Despite what [Petitioner] would like to believe, the validity of the 2008 conviction for Felony Resisting Arrest now stands beyond question.

*Alley*, 2015 WL 7256928, at *2. The Delaware Supreme Court affirmed that decision on post-conviction appeal, explaining

> [t]he Superior Court properly held that counsel was not ineffective at sentencing or on appeal because there simply was no good faith basis for counsel to challenge [Petitioner's] sentencing as a habitual offender after the validity of [Petitioner's] 2008 felony conviction was upheld by the Superior Court and affirmed by this Court on appeal. **Because there was no basis to challenge [Petitioner's] status, the Superior Court did not err in determining [Petitioner's] status and then sentencing him as a habitual offender during the course of the same hearing,** nor did the State breach its plea agreement.

---

[4] *See generally Alley*, 2014 WL 7009961.

[5] *See Alley*, 2014 WL 605440, at *1.

*Alley*, 2016 WL 3563490, at *2 (emphasis added).

Since Petitioner presented Claim One to the Delaware Supreme Court on direct appeal and post-conviction appeal, and the Delaware Supreme Court denied the argument as meritless on both occasions, he will only be entitled to habeas relief if the Delaware state courts' decision[6] was either contrary to, or involved an unreasonable application of, clearly established federal law. The clearly established federal law applicable to Claim One was set forth by the United States Supreme Court in *Oyler v. Boles*, 368 U.S. 448, 452 (1962). In *Oyler*, the Supreme Court held that "due process does not require advance notice that the trial on the substantive offense will be followed by a habitual offender proceeding" if a state chooses to determine a defendant's habitual offender status in a proceeding separate from the criminal trial. Where a separate hearing is held to determine a defendant's habitual offender status, due process is satisfied so long as the defendant receives reasonable notice of the habitual offender hearing and an opportunity to be heard with respect to the habitual offender charge. *Id.*

In this proceeding, Petitioner does not allege that he received insufficient notice of the habitual offender hearing; rather, he complains that he was denied due process because the Superior Court determined his habitual offender status and sentenced him in one single hearing, without providing him with an opportunity to challenge his habitual offender status. Although the Delaware state courts did not reference any federal law when denying this argument, their decisions were not contrary to clearly established federal law, because the analysis in each of the relevant state court opinions comported with *Oyler*. *See Williams,* 529 U.S. at 406 ("[A] run-of-

---

[6] On direct appeal, the Delaware Supreme Court expressly addressed the argument contained in Claim One. However, on post-conviction appeal, the Delaware Supreme Court primarily referred to the Superior Court's reasoning for denying the Rule 61 motion. For ease of analysis, the Court will use the phrase "Delaware state courts' decision" to reference all of the relevant Superior Court and Delaware Supreme Court opinions adjudicating Claim One.

the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause"). For instance, when denying a similar argument in Petitioner's direct appeal, the Delaware Supreme Court found that Petitioner did not "offer any argument challenging his sentencing as a habitual offender" during the sentencing hearing, even though he "was given the opportunity to speak directly to the sentencing judge." *Alley*, 2015 WL 4511348, at *3. Similarly, when denying the same argument contained in Claim One during Petitioner's Rule 61 proceeding, the Superior Court explained,

> [a]fter counsel informed the Superior Court at the sentencing hearing that [Petitioner] did not oppose the State's habitual offender motion, Petitioner was given the opportunity to speak directly to the sentencing judge. [Petitioner] spoke to the judge at length. [Petitioner] did not contradict his counsel's representation that there was no opposition to the State's motion, nor did [Petitioner] offer any argument challenging his sentencing as a habitual offender. Under these circumstances, we find no merit to [Petitioner's] claim.

*Alley*, 2015 WL 4511348, at *3 (footnotes omitted).

The Court's inquiry is not finished, however, because it must also determine if the Delaware Supreme Court unreasonably applied clearly established federal law to the facts of Petitioner's case. As an initial matter, given Petitioner's failure to provide any clear and convincing evidence to the contrary, the Court accepts as correct the Delaware Supreme Court's factual finding that Petitioner "was given the opportunity to speak directly to the sentencing judge," but did not "offer any argument challenging his sentencing as a habitual offender." *Alley*, 2015 WL 4511348, at *3. For instance, when the Superior Court judge stated, "you realize that the State could have come in here under the habitual petition and asked to put you away until you died in prison," Petitioner responded, "I know," without adding any further comments. (D.I. 13-9 at 25)

9

Additionally, even though Petitioner does not allege that he was given insufficient notice of his habitual offender status, the record demonstrates that he was provided more than reasonable notice. During Petitioner's plea colloquy, the State informed the Superior Court that it was planning on filing a motion to declare Petitioner a habitual offender, and then identified the three predicate felony convictions that would be used to establish his habitual offender status. (D.I. 13-1 at 2). Defense counsel also informed the Superior Court that Petitioner understood the State was filing a habitual offender petition. (D.I. 13-1 at 2). Finally, the Superior Court informed Petitioner that he would have a right to challenge his habitual offender status at sentencing. (D.I. 13-1 at 3).

In short, the record demonstrates that Petitioner had reasonable notice of his habitual offender status and that he was provided an opportunity to be heard during the hearing with respect to his habitual offender status. As such, the Court concludes that Petitioner's due process rights were not violated when the Superior Court determine Petitioner's habitual offender status and sentenced him in one single proceeding. Accordingly, the Delaware state courts' denial of Claim One was neither contrary to, nor an unreasonable application of, *Oyler*.

B. **Claim Two: Breach of Plea Agreement**

In Claim Two, Petitioner contends that he entered his guilty plea with the understanding that he could challenge his status as a habitual offender at sentencing, and that the State breached the agreement by not allowing him to do so. Citing *Santobello v. New York*, 404 U.S. 257 (1971), Petitioner presented this argument to the Delaware Supreme Court on post-conviction appeal (D.I. 13-8 at 25), which denied the argument as meritless. Consequently, Petitioner's instant challenge will only warrant relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts.

Determining if a promise was made in a plea agreement is a question of fact. *See Trussell v. Bowersox*, 447 F.3d 588, 591 (8th Cir. 2006); *United States v. Snow*, 234 F.3d 187, 189 (4th Cir. 2000). The Court has thoroughly reviewed the record, and nothing in the plea agreement or plea colloquy transcript reflects a promise or guarantee that the State would raise the issue of Petitioner's right to challenge his habitual offender status during the sentencing hearing. The plea agreement states that (1) the "State will file a motion to declare the defendant a habitual offender pursuant to 11 Del. C. 4214(a)" and "recommend no more than 10 years of unsuspended L5 time;" and (2) the "Defendant will recommend a sentence of five years at the time of sentencing." (D.I. 13-8 at 38). Of particular relevance to the instant issue is the agreement's identification of the three requisite convictions for habitual offender status, with the explanation that "[b]oth parties are aware that the Defendant is challenging his 2008 Resisting Arrest Conviction, which is pending." *Id.*

In turn, the only assurance reflected by the plea colloquy is that Petitioner understood that he had the right to challenge the State's motion to declare him a habitual offender during the sentencing hearing. (D.I. 13-9 at 17). For instance, the following exchange between the Superior Court and Petitioner occurred during the plea colloquy:

> PETITIONER: [] As it says on the plea about me challenging the 2008 conviction, I know the State [is] aware of the fact that that's in the Supreme Court, but I don't agree with the habitual sentencing and I want to be –
>
> SUPERIOR COURT: You'll have a right to challenge that sentencing.
>
> PETITIONER: I will have the right?
>
> SUPERIOR COURT: You will have a right, first of all, to oppose the petition [for habitual offender status], it's not an agreed-upon petition here in this Court, and if need be, there are certain rights to appeal that finding, that goes in with the sentencing appeal.

11

(D.I. 13-9 at 17)

Finally, during the sentencing hearing, and in Petitioner's presence, the State informed the Superior Court that "it's not clear to the State at this time if the motion [to declare Petitioner a habitual offender] is being contested." (D.I. 13-2 at 2). Defense counsel responded, "the motion is not being contested as to [Petitioner's] habitual status. [. . .] We have no good faith basis to oppose it at this time." *Id.* The Superior Court then provided Petitioner an opportunity to speak at his hearing. (D.I. 13-2 at 4). When Petitioner addressed the Superior Court, he did not disagree with defense counsel's statement that he would not oppose habitual sentencing, and he did not challenge his habitual offender status. (D.I. 13-2 at 4-5). Even when the Superior Court explicitly mentioned the State's "habitual petition," Petitioner did not raise the issue of his habitual offender status, and even told the Superior Court that he understood his sentence and did not have any questions. (D.I. 13-2 at 6). Based on the foregoing record, the Court concludes that the Delaware Supreme Court did not unreasonably determine the facts when it held that the State did not breach the plea agreement.

The Court further concludes that the Delaware Supreme Court's decision was not contrary to, or an unreasonable application of, clearly established federal law. Pursuant to *Santobello*, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such a promise must be fulfilled." *Santobello*, 404 U.S. at 262. The Third Circuit has opined that, "[a]lthough it is not made clear in *Santobello* [] that the violation of a plea bargain by the state involves a defendant's due process right, we are satisfied that such a right is implicated." *Patrick v. Camden Cnty Prosecutor*, 630 F.2d 206, 207 (3d Cir. 1980). "In determining whether the plea agreement has been breached, courts must determine whether the government's conduct is inconsistent with what was reasonably

understood by the defendant when entering the plea of guilty." *United States v. Nolan-Cooper*, 155 F.3d 221, 236 (3d Cir. 1998).

The Delaware Supreme Court did not cite any federal cases when addressing Petitioner's instant breach of plea/due process argument. Nevertheless, the Delaware Supreme Court's determination that the State did not breach the plea agreement because there was no basis to challenge Petitioner's status was not contrary to clearly established federal law, because its reasoning comports with the due process considerations set forth in *Santobello* and its progeny. The plea agreement acknowledged that Petitioner was challenging his 2008 felony conviction and, once the Delaware Supreme Court found the 2008 conviction to be valid, there was simply was no basis to challenge the State using the 2008 conviction as one of the predicate convictions for Petitioner's habitual offender status. In turn, given the Court's prior determination that the State did not, in fact, breach the plea agreement, the Court cannot conclude that Delaware Supreme Court unreasonably applied *Santobello* and its progeny to the facts of Petitioner's case in denying the instant argument. Accordingly, the Court will deny Claim Two for failing to satisfy § 2254(d).

### C. Claim Three: Ineffective Assistance of Counsel

In Claim Three, Petitioner contends that defense counsel provided ineffective assistance by failing to challenge his status as a habitual offender during the sentencing hearing. Petitioner presented this argument to the Delaware Supreme Court on post-conviction appeal, which denied it as meritless. Therefore, Petitioner will only be entitled to federal habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established law governing the instant ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its

13

progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Superior Court cited and applied the *Strickland* standard in denying Claim Three, and the Delaware Supreme Court affirmed that decision based on the Superior Court's reasoning. *See Alley*, 2016 WL 3563490, at *2. Given these circumstances, the Delaware Supreme Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court's inquiry under § 2254(d)(1) is not over, because it must also determine if the Delaware Supreme Court's denial of Claim Three as meritless involved an unreasonable application of the *Strickland* standard. When performing this inquiry, the Court must review the

14

Delaware Supreme Court's decision with respect to petitioner's ineffective assistance of counsel claims through a "doubly deferential" lens. *See Harrington*, 562 U.S. at 105. In other words, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

After reviewing the record, the Court concludes that the Delaware Supreme Court's decision was not based on an unreasonable application of *Strickland*. It is well-settled that an attorney does not provide ineffective assistance by failing to raise meritless objections or arguments. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). Approximately one month before Petitioner's sentencing as a habitual offender, the Delaware Supreme Court upheld the validity of his 2008 felony conviction. The attorney who represented Petitioner in his Rule 61 challenge to his 2008 conviction was the same attorney who represented Petitioner at sentencing. *See Alley*, 2015 WL 7256928, at *2. Because there was question about the validity of the other requisite felony convictions for Petitioner's habitual offender status,[7] and given defense counsel's complete awareness that the 2008 felony conviction was valid, Petitioner cannot demonstrate that he was prejudiced by defense counsel's failure to raise a meritless objection to his habitual offender sentence. Therefore, the Court concludes that the Delaware Supreme Court did not unreasonably apply *Strickland* in denying Petitioner's instant assertion regarding defense counsel's failure to oppose his habitual offender status. Accordingly, the Court will deny Claim Three for failing to satisfy § 2254(d).

### D. Claim Four: Due Process Violation During Sentencing Hearing

In Claim Four, Petitioner contends the Superior Court violated his due process rights by using his "constitutionally infirm" 2008 felony conviction as one of the predicate convictions to

---

[7] (D.I. 13-2 at 3); *see Alley*, 2015 WL 4511348, at *3.

establish his habitual offender status. (D.I. 1 at 10). According to Petitioner, his 2008 conviction is "constitutionally infirm" because the State and defense counsel "coerced" him to enter the 2008 guilty plea by telling him he would be sentenced to life if he proceeded to trial. Petitioner presented this argument to the Delaware Supreme Court on direct appeal, (D.I. 1 at 10; D.I. 13-8 at 9-10), and the Delaware Supreme Court denied the argument as meritless. Consequently, Petitioner will only be entitled to habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.[8]

It is well-settled that a defendant's due process rights are violated if he is sentenced on the basis of materially untrue assumptions or misinformation. *See Townsend v. Burke*, 334 U.S. 736, 741 (1948) (holding that sentencing a prisoner "on the basis of assumptions concerning his criminal record which were materially untrue," "whether caused by carelessness or design, is inconsistent with due process of law, and such a conviction cannot stand."); *see also Roberts v. United States*, 445 U.S. 552, 563 (1980) ("As a matter of due process, an offender may not be sentenced on the basis of mistaken facts or unfounded assumptions."). As previously explained, prior to the sentencing hearing in this case, Petitioner filed a Rule 61 motion challenging the validity of his 2008 felony conviction. In that Rule 61 proceeding, Petitioner contended that his defense counsel in 2008 incorrectly informed him that he would be subject to habitual offender sentencing if he was convicted at trial, and that it was defense counsel's incorrect advice which led him to plead guilty. *See State v. Alley*, 2014 WL 605440, at *2 (Del. Super. Ct. Feb. 14, 2014). However, both the Superior Court and the Delaware Supreme Court concluded that Petitioner's

---

[8] The Court disagrees with the State's contention that Claim Four is procedurally barred from habeas review due to Petitioner's failure to exhaust state remedies. Although the State correctly asserts that Petitioner did not present Claim Four to the Delaware Supreme Court on post-conviction appeal, Petitioner presented the Claim to the Delaware Supreme Court on direct appeal, which is all that is needed to exhaust state remedies for this argument.

2008 guilty plea was knowing, voluntary, and intelligent, and denied his Rule 61 motion as meritless. *See Alley*, 2014 WL 605440, at *5; *Alley*, 2014 WL 7009961, at *1.

Since the Delaware Supreme Court upheld Petitioner's 2008 felony conviction as valid prior to Petitioner's sentencing hearing for his 2014 conviction, the Superior Court did not base its habitual offender sentencing decision with respect to Petitioner's 2014 conviction on materially false or unreliable information when it used the 2008 felony conviction as one of the predicate convictions for determining Petitioner's habitual offender sentence. Therefore, the Delaware Supreme Court's denial of the instant argument was not contrary to, or an unreasonable application of, *Townsend* and its progeny, nor was it based on an unreasonable determination of facts. Accordingly, the Court will deny Claim Four for failing to satisfy § 2254(d).

## IV.  CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The Court has concluded that the instant Petition fails to warrant federal habeas relief, and is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the Court will not issue a certificate of appealability.

## V. **CONCLUSION**

For the reasons stated, Petitioner's Petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate Order shall issue.